UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 1 6 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-523-GWU

TERESA CHADWELL,                                        PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled.  If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
    claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities?  If yes, proceed to

1

Chadwell

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Chadwell

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Chadwell

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning a specific step in the test is in order.

In the Sixth Circuit, the Step Three severity regulation has been held to be a <u>de</u> <u>minimis</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

## DISCUSSION

The plaintiff, Teresa Chadwell, applied for DIB and SSI with a subsequently-amended onset date of March 31, 2003 (Tr. 329), alleging disability due to osteoarthritis and a bulging disc in her neck which caused pain, a feeling of dizziness, and numbness in her hands. (Tr. 66). After reviewing medical evidence and hearing the plaintiff's testimony, during which she also described anxiety and depression, an Administrative Law Judge (ALJ) determined that Mrs. Chadwell did not have a "severe" impairment, and terminated her inquiry at Step 3 of the <u>Garner</u> analysis. (Tr. 21-3). The Appeals Council declined to review, and this action followed.

5

On appeal, this Court must determine whether the administrative decision is not supported by substantial evidence.

On June 27, 2001, an MRI of the cervical spine showed mild degenerative disc disease and bony change at the levels of C-4 through C6, but the radiologist opined that there was no critical stenosis or compromise of the neural elements, adding that the "canal is quite capacious and no canal stenosis is seen." (Tr. 112). Dr. James Bean, a neurosurgeon, reviewed the MRI and agreed that it showed no stenosis, herniated disc, or other form of instability, and his examination showed that the plaintiff had a good range of motion of the neck, full shoulder elevation, and normal deltoid, biceps, and triceps strength. (Tr. 173). There was no loss of sensation in the arms or hands and reflexes were normal, and Dr. Bean concluded that these "minimal" cervical degenerative changes could not be responsible for the extent of the symptoms the plaintiff was experiencing. (Id.). This early period is, however, before the amended alleged onset date.

On follow-up with Dr. Bean in September, 2002, following a motor vehicle accident in May, 2002, a new MRI, while interpreted by the radiologist as having an "overall stable appearance" since the prior examination (Tr. 125), did appear to show some osteophytic disc protrusions at C4-5 and C5-6 causing some foraminal narrowing, but Dr. Bean recommended physical therapy and would only recommend a fusion at two levels if the plaintiff could not tolerate "the problem" (Tr. 168). On

6

Mrs. Chadwell's final visit to this source, in January, 2004, the neurosurgeon noted

the plaintiff was not any better, but a surgical solution was not feasible because she

had no insurance coverage, and the doctor recommended a home traction unit. (Tr.

167). Thus, while Dr. Bean did not himself specify functional restrictions after May,

2002, the new MRI did show abnormalities and there was a discussion of surgery.

Another neurosurgeon, Dr. John Gilbert, examined the plaintiff in September,

2004, when Chadwell had complaints of neck and mid-back pain, and the

examination showed, among other findings, a decreased range of motion of the neck

and a positive Spurling's test suggestive of a cervical root irritation (Tr. 240).[1]  He

ordered physical therapy and additional testing. A new cervical MRI showed a small

disc protrusion at C4-C5[2] and a bulge with disc space narrowing at C5-C6. (Tr. 252).

Unfortunately for the plaintiff, Dr. Gilbert did not list functional restrictions.

The plaintiff underwent two consultative physical evaluations at the request

of the state agency. Both Dr. Thadis Cox and Dr. Mark Burns found no physical

evidence for restrictions, although Dr. Cox did note a diminished grip bilaterally and

---

[1]See Smith vs. the Home Depot Welfare Benefits Plan, 2006 WL 1980284 (M.D. Fla. 2006) for a discussion of Spurling's test.

[2]According to the American Medical Association's Guides to the Evaluation of Permanent Impairment (4th Ed.), a C4 injury may affect the supraclavicular nerve, on the top of the shoulder, as well as a dermatome on the lower part of the neck. See Chapter 3, Figures 45, 46. A C5 injury may affect the axillary musculocutaneous and a superficial branch of the radial nerves, all further down the arm. See Chapter 3, Figures 45, 46.

Chadwell

evidence of pain in the cervical spine.  (Tr. 129, 254-9).  Neither appeared aware of

any MRI results.

    Dr. James Ross, a state agency physician who reviewed a portion of the

record, concluded that the plaintiff's physical problems were less than "severe." (Tr.

151).  He did not, however, see Gilbert's information or the opinion of the plaintiff's

treating physician, James Noble.  See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir.

1994).

    Dr. Noble issued a physical residual functional capacity assessment dated

June 15, 2004 indicating that his patient had a "ruptured" cervical disc and

degenerative disc disease, and was limited to less than full-time sitting, standing,

and walking, and lifting no more than five pounds occasionally, with additional

restrictions on grasping, turning, twisting, and reaching.  (Tr. 193-7).  The ALJ

rejected these restrictions in part on the grounds that they were not supported by

"any significant medical testing." (Tr. 22).  However, a review of the record shows

that Noble had referred his patient to the specialists Bean and Gilbert and was sent

copies of the doctors' progress notes (e.g., Tr. 167-173, 241) and it can not be

disputed that his diagnoses were supported by information from the two doctors.  In

2003, Dr. Noble did find tender trapezius muscles (Tr. 206), albeit most of his own

progress notes were rather laconic, and was aware of MRI results.  Under the de

8

Chadwell

minimis standards of <u>Farris</u>, Noble's opinion <u>was</u> sufficient to establish a "severe"

cervical spine condition.

The decision will be remanded for further consideration.[3]

This the ___/ 6___ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]Since the case is being remanded anyway, the Court notes in passing, regarding Chadwell's mental status, that the ALJ failed to mention the Global Assessment of Functioning (GAF) of 50 (Tr. 270, 272) in her description of the Comprehensive Care Center notes.

9